United States District Court
Southern District of Texas
**ENTERED**
April 04, 2025
Nathan Ochsner, Clerk

# In the United States District Court for the Southern District of Texas

## GALVESTON DIVISION

No. 3:24-cv-223

TYLER HARRIS, *PLAINTIFF*,

v.

GALVESTON COUNTY, *ET AL.*, *DEFENDANTS*.

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

Before the court are the defendants' motions to dismiss. Dkts. 7, 8, 9. The court will grant the motions.

## I.    Background

Around midnight one night, Deputy Jordan Buckley stopped, frisked, evaluated, and arrested Tyler Harris for driving while intoxicated. Dkt. 1 ¶¶ 22, 48–56, 59. Buckley searched and impounded Harris' truck, then took him to the hospital for drug-and-alcohol blood testing, the police station for a drug-influence evaluation by Deputy Anthony Rao, and finally to jail. *Id.* ¶¶ 59, 83, 84, 91, 101. Rao concluded Harris was under the influence of a central nervous system depressant and unable to operate a vehicle safely.

Dkt. 8-3 at 4. Deputy Marc Healy, Buckley's supervisor, reviewed and approved Buckley's case report. Dkt. 1 ¶¶ 62, 74. The test results, however, came back negative for illegal substances and alcohol consumption. *Id.* ¶¶ 83, 93. Galveston County dropped the charge against Harris for insufficient evidence. *Id.* ¶ 94.

Citing 42 U.S.C. § 1983, Harris sued Galveston County—as well as Buckley and Healy, in their individual and official capacities—alleging Fourth and Fourteenth Amendment violations. *Id.* ¶¶ 10–12, 112–195. The defendants have moved to dismiss Harris' complaint under Rule 12(b)(6). Dkts. 7, 8, 9.

## II.    Legal Standards

### A.    Rule 12(b)(6)

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the pleaded facts allow the court to reasonably infer that the defendant is liable for the alleged conduct. *Id.* In reviewing the pleadings, a court accepts all well-pleaded facts as true, "construing all reasonable inferences in the complaint in the light most favorable to the plaintiff." *White v. U.S. Corrs.*,

*L.L.C.*, 996 F.3d 302, 306–07 (5th Cir. 2021). But the court does not accept "conclusory allegations, unwarranted factual inference, or legal conclusions" as true. *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

While a court "usually may rely on only the complaint and its proper attachments," the Fifth Circuit considers "[d]ocuments that a defendant attaches to a motion to dismiss . . . part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his] claim." *Hodge v. Engleman*, 90 F.4th 840, 844 (5th Cir. 2024) (quotations and citation omitted); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (citation omitted). The court adopts video recordings included in the pleadings "over the factual allegations . . . if the video 'blatantly contradict[s]' those allegations." *Harmon v. City of Arlington*, 16 F.4th 1159, 1163 (5th Cir. 2021) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

## B.    Section 1983

To state a claim against a government official under § 1983, a plaintiff must allege (1) the defendant violated "a right secured by the Constitution and laws of the United States" and (2) "a person acting under color of state law" committed the violation. *West v. Atkins*, 487 U.S. 42, 48 (1988). Personal-capacity claims under § 1983 are subject to the affirmative defense

of qualified immunity. *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009). Once raised, it is the plaintiff's burden to negate the defense by (1) "alleg[ing] a violation of a constitutional right" and (2) showing the right "was 'clearly established' at the time of the alleged violation." *Cope v. Cogdill*, 3 F.4th 198, 204 (5th Cir. 2021) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). The right is clearly established when the court finds "controlling authority . . . that defines the contours of the right in question with a high degree of particularity." *Hogan v. Cunningham*, 722 F.3d 725, 735 (5th Cir. 2013) (citation omitted). In other words, the court must find a reasonable officer could have believed the defendant's conduct was lawful in the situation he confronted. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The usual Rule 12(b)(6) standard applies when a defendant moves to dismiss a § 1983 claim based on qualified immunity. *Benfer v. City of Baytown*, 120 F.4th 1272, 1279 (5th Cir. 2024) ("[A] complaint survives dismissal if it pleads facts that, if true, would permit the inference that defendants are liable under § 1983 and would overcome their qualified immunity defense." (quotations and citation omitted)).

A plaintiff may also sue a municipality under § 1983—commonly called a *Monell* claim. *Edwards v. City of Balch Springs*, 70 F.4th 302, 307 (5th

Cir. 2023). To state a *Monell* claim, a plaintiff must plead facts that plausibly establish "(1) an official policy (2) promulgated by the municipal policymaker (3) [that] was the moving force behind the violation of a constitutional right." *Id.* (citation omitted). "[T]he unconstitutional conduct must be *directly* attributable to the municipality through some sort of official action" or ratification. *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001) (emphasis added). Municipalities "cannot be found liable on a theory of vicarious liability or respondeat superior." *St. Maron Props., L.L.C. v. City of Hous.*, 78 F.4th 754, 759–60 (5th Cir. 2023).

"To get past the pleading stage, a [*Monell*] complaint's description of a policy or custom and its relationship to the underlying constitutional violation cannot be conclusory; it must contain specific facts." *Henderson v. Harris Cnty.*, 51 F.4th 125, 130 (5th Cir. 2022) (quotations and citation omitted).

## III.  Analysis

### A.    Count I: Officer Misconduct

In Count I, Harris alleges Buckley and Healy violated his Fourth and Fourteenth Amendment rights to freedom from unreasonable search and seizure and equal protection of the law. Dkt. 1 ¶¶ 112–24. In response, Buckley and Healy have raised qualified immunity. Dkts. 8, 9.

The court first determines "whether the undisputed facts and disputed facts, accepting [Harris'] version of the disputed facts as true, constitute a violation of a constitutional right." *Benfer*, 120 F.4th at 1279 (citation omitted). The defendants, however, attach Buckley's body-cam and dash-cam footage to their motions to dismiss. *See* Dkts. 8-4, 8-5, 11. Because the events captured by the footage are sufficiently referenced in and central to Harris' complaint, the court considers the videos part of the pleadings in ruling on the defendants' motions. *See* Dkt. 1 §§ 16, 19, 21–28, 30–61, 82–84, 90–91, 112–24, 132, 134–37, 141–42, 191, 152 (describing in detail the events depicted in the appended video footage and how the events violated Harris' constitutional rights); *Collins*, 224 F.3d at 498–99 (finding incorporation by reference proper where motion-to-dismiss exhibit is central to complaint's allegations); *Hodge*, 90 F.4th at 844 (stressing the pleadings must *sufficiently* refer to the videos before the court may consider them incorporated by reference). And where the videos "blatantly contradict[]" the allegations in the complaint, the court adopts the former. *Harmon*, 16 F.4th at 1163 (citation omitted). The court also reviews the investigative reports by Deputy Buckley and Rao, attached to the defendants' motions to dismiss, because the complaint details the reports' contents and alleged

constitutional defects. Dkts. 1 §§ 62, 63, 66, 73–76, 79–81, 84–89; 8-1; 8-2; 8-3; *see Collins*, 224 F.3d at 498–99.

For the reasons below, the court finds the exhibits incorporated by reference into the pleadings—the body- and dash-cam footage and investigative reports—controvert Harris' alleged constitutional violations in his complaint. Dkts. 1, 8-1, 8-2, 8-3, 8-4, 8-5.

### 1.    Reasonable Suspicion for Traffic Stop

Buckley needed only reasonable suspicion of a traffic violation to stop Harris. *See United States v. Monsivais*, 848 F.3d 353, 357 (5th Cir. 2017) (stating reasonable suspicion is more than a hunch but need not amount to probable cause) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)); *Benfer*, 120 F.4th at 1280 ("[Traffic] stops comport with the Constitution if they are supported by reasonable suspicion.")

Harris claims Buckley had no basis to stop him, but the video shows Harris (1) with a defective high-mounted stop lamp, (2) failing to yield before turning on a yellow light, (3) weaving between and crossing over the center and outer lines, and (4) driving several minutes before realizing Buckley had turned his flashing lights on and wanted Harris to pull over. Dkt. 8-5 at 00:03–00:15, 00:25–02:30, 02:35–04:55. Given Harris' traffic violation, weaving, and inattentiveness, all indicating the driver's impairment, along

with the lateness of the hour, Buckley's stop was justified at the inception. *See, e.g.*, *McClain v. Delgado*, No. 23-50879, 2025 WL 868168, at *2 (5th Cir. Mar. 20, 2025) (holding officer had reasonable suspicion for traffic stop when defendant swerved toward shoulder); *Kansas v. Glover*, 589 U.S. 376, 383 (2020) (explaining crossing center line and swerving provide "sound indicia" of driving while intoxicated "as a matter of common sense" (citation omitted)); *United States v. Cervantes*, 797 F.3d 326, 335 (5th Cir. 2015) (considering time of day in finding reasonable suspicion for traffic stop).

### 2. *Terry* Stop and Probable Cause for Arrest

To comport with the Fourth Amendment, Buckley's "subsequent actions [must be] reasonably related in scope to the circumstances that justified the stop." *Benfer*, 120 F.4th at 1280 (citation omitted). In other words, Buckley's conduct during the traffic stop must be reasonable considering his suspicion that Harris was driving while intoxicated. *See id.*

Harris alleges Buckley extended the stop, ordered him out of his truck, frisked him, and conducted a field-sobriety test, all without lawful justification. Dkt. 1 §§ 33–55. After pulling Harris over, Buckley asks him several questions about himself and his activities that night. Dkt. 8-4 at 03:30–08:20. The questions, however, are reasonable attempts at making Harris more comfortable and inquiring into his state of mind, "last[ing] no

longer than [was] necessary to effectuate [the stop's] purpose." *Benfer*, 120 F.4th at 1280 (citation omitted); *see also Berkemer v. McCarty*, 468 U.S. 420, 439 (1984) (holding officer who lacks probable cause may "ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions" that the detainee has committed a crime).

Throughout this exchange, Buckley finds Harris "space[d]-out" in response, taking several seconds to answer basic questions like where he lives. Dkts. 8-2 at 3; 8-4 at 03:30−08:20. Buckley describes Harris' eyes as "watery, glassy, [and] bloodshot" and states he smells "marijuana emitting from the vehicle." Dkts. 8-2 at 3; 8-4 at 32:00−32:20. Ashes are in plain view in the console. Dkts. 8-2 at 3; 8-4 at 26:00−26:50, 32:00−32:20. In light of these observations, Buckley asks Harris to step out of the vehicle to take a field-sobriety test. Dkts. 1 § 42; 8-4 at 08:15.

But before conducting that test, Buckley frisks Harris' person. Dkts. 1 §§ 48−49; 8-4 at 08:50−9:09. When reviewing the constitutionality of a frisk, "the focal point of [the court's] analysis is whether the totality of the relevant circumstances that transpired before Deputy [Buckley's] announcement of the pat-down revealed articulable facts from which an officer could reasonably suspect that [Harris] had committed, was

committing, or was about to commit a criminal offense." *Monsivias*, 848 F.3d at 358. The video shows Buckley briefly patting Harris down outside his clothes for about twenty seconds, explaining what he is doing throughout; Harris responds by making a joke. Dkt. 8-4 at 08:50–9:09. Based on Buckley's observations of Harris' driving, speech, demeanor, and physical appearance, along with the marijuana smell from his truck, the court finds the totality of the circumstances reveal articulable facts from which Buckley could suspect Harris had committed the offense of driving while intoxicated. Harris fails to allege an unconstitutional frisk.

Next, the field-sobriety test. Throughout the evaluation, Harris moves extremely slowly, forgets Buckley's simple instructions to him, and struggles to count out loud as instructed. Dkt. 8-4 at 09:30–18:28. Buckley observes four or five of eight possible clues of intoxication on the walk-and-turn test, two of four clues on the one-leg stand test, and all six possible clues on the horizontal gaze nystagmus (HGN) test. Dkts. 8-2 at 3; 8-4 at 32:55–33:10; *see McClain*, 2025 WL 868168, at *1 (describing field-sobriety assessments).

Harris claims the traffic stop's events failed to develop probable cause for his arrest. Dkt. 1 §§ 115, 121. Quite the opposite. To show a warrantless arrest is unreasonable under the Fourth Amendment, Harris must allege that "no reasonable officer could have believed that [Buckley] had probable cause

for [Harris'] arrest." *McClain*, 2025 WL 868168, at \*2. Given that Buckley observed all six possible clues on the HGN test, over half the clues on the walk-and-turn, and half the clues on the one-leg stand, Harris can hardly argue that no reasonable officer could believe Buckley's conclusion that Harris was driving while intoxicated. *See id.* at 1–2 (holding probable cause for driving-while-intoxicated arrest exists where officer observes lower scores on field-sobriety tests than here). Harris' arrest was lawful because Buckley had probable cause to arrest him for driving while intoxicated.

### 3.    Search Incident to Lawful Arrest

Harris next alleges Buckley unconstitutionally searched Harris' truck after the arrest. Dkt. 1 §§ 58–61. "[C]ircumstances unique to the automobile context justify a search incident to arrest when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle." *Arizona v. Gant*, 556 U.S. 332, 335 (2009). The arrest offense here—driving while intoxicated—"suppl[ied] a basis for searching [Harris'] passenger compartment . . . and any containers therein," as Buckley could expect to find alcohol, drugs, or other offense-related evidence in the truck. *See id.* at 344. Buckley's search of Harris' truck was lawful.

### 4. Arrest Report

Harris next alleges Buckley filed a false and misleading arrest report, and that Healy inappropriately approved it. Dkt. 1 §§ 62–81. Healy was not involved in Harris' arrest and only reviewed Buckley's report several days after the arrest. *Id.* §§ 62, 74. Harris points out grammatical errors and a typo in the date of the arrest, among others, and Healy's failure to identify the errors before approving the report. *Id.* §§ 62–81. The alleged errors have no constitutional significance because Harris' arrest is substantively supported by Buckley's body- and dash-cam footage. Dkts. 8-4, 8-5. Moreover, these reports were neither sworn nor created to obtain a warrant and were prepared after Harris' arrest. The complaint fails to sufficiently allege a violation of Harris' constitutional rights by Buckley or Healy on this ground.

### 5. Transit

Lastly, Harris claims Buckley drove him around Galveston County on a "fishing expedition" en route from the arrest to jail, purportedly looking for a way to justify the arrest. Dkt. 1 §§ 82–91. Buckley arrested Harris at 11:53 p.m. and got to the hospital at 12:34 a.m. for Harris' blood draw. *Id.* § 82; Dkt. 8-2 at 1. They arrived at the Santa Fe Police Department shortly after at 12:45 a.m., where Deputy Rao performed a drug-influence evaluation of Harris. Dkts. 1 § 84; 8-3. Buckley ran Harris' driver's license at 1:56 a.m. Dkt.

1 § 90. Harris and Buckley reached the Galveston County Jail at 2:17 a.m., a 25-minute drive from the police department. *Id.* § 91. Less than two hours elapsed between Harris' arrest and his detention in jail—a reasonable amount of time for a hospital visit, in-depth drug-influence evaluation, and jailing, with transit between each. These "expeditionary travels throughout Galveston County" did not violate Harris' rights. *Id.* at 14.

Because Harris fails to plausibly allege a constitutional violation, the court does not reach the question of whether the right is clearly established. *See Cope*, 3 F.4th at 204 (explaining plaintiff's two-pronged burden to overcome qualified immunity). "[Q]ualified immunity protects all but the plainly incompetent or those who knowingly violate the law," and Buckley and Healy are clearly neither. *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021) (quotations and citation omitted); *see* Dkts. 8-4, 8-5. Accordingly, Harris' claims against Buckley and Healy in their individual capacities are dismissed. Same goes for his claims against them in their official capacities. *See Goodman*, 571 F.3d at 395 ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the [state] entity." (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985))); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66, 71 (1989) (holding the Eleventh Amendment bars official-capacity suits unless the state waives immunity).

### B.    Counts II-IV: Municipal Liability

Harris brings Counts II, III, and IV against Galveston County under a municipal-liability theory. Dkt. 1 ¶¶ 125–95. He alleges the county violated his Fourth and Fourteenth Amendment rights by (1) failing to train and supervise its police force, (2) failing to maintain policies, practices, and training that meet minimum standards in this field, and (3) perpetuating an unconstitutional policy of using traffic stops to conduct unreasonable searches and seizures. *Id.*

The failure-to-train theory requires a plaintiff to show (1) "the [county] failed to train or supervise the officers involved;" (2) "a causal connection" between the alleged failure to train or supervise and constitutional violation; and (3) "the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Peña v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018). To prevail under this "stringent" standard, Harris must allege with specificity how a particular training program is defective, along with "a pattern of similar constitutional violations by untrained employees." *Id.* (citation omitted).

Harris fails to meet this "notoriously difficult" standard for failure to train. *Allen v. Hays*, 65 F.4th 736, 749 (5th Cir. 2023). The complaint pleads the three elements of a failure-to-train theory in a conclusory manner, failing

to support the allegations with any specific facts. Dkt. 1 §§ 145–53. A pattern of constitutional violations is not alleged, nor does Harris define the minimum standards in this industry, detail the county's current training program, or explain how it is inadequate. *Id.* Count II is dismissed.

Finally, Counts III and IV. To state a claim for failure to maintain adequate policies under § 1983, the plaintiff must allege "three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski*, 237 F.3d at 578 (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)). Harris alleges the county failed to maintain adequate training standards and perpetuates a policy of using traffic stops as a tool for violating the Fourth Amendment. Dkt. 1 §§ 145–56, 192.

Harris fails to allege the second element—an official policy or custom—by omitting from the complaint any specific "policy statement[s], ordinance[s], regulation[s], or decision[s] that [are] officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority." *Webster v. City of Hous.*, 735 F.2d 838, 853 (5th Cir. 1984). Nor has Harris alleged facts sufficient to show a "persistent, widespread practice" of an unconstitutional traffic-stop custom "so common and well settled" that it "fairly represents

municipal policy." *Id*. Harris pleads only conclusory allegations arising from his own stop and arrest. Dkt. 1. §§ 95–97, 151, 155–56, 192.

Harris' allegations are insufficient to survive the pleading stage, particularly without facts showing "[a]ctual or constructive knowledge of such custom" attributable to a county policymaker. *Id*.; *Peña*, 879 F.3d at 622–23 (conclusory and nonspecific *Monell* claims do not survive a motion to dismiss). And because Harris fails to plead an official policy, he similarly fails to show such a policy was the "moving force" behind his alleged constitutional violations. Counts III and IV are dismissed.

\*    \*    \*

For the foregoing reasons, the court grants the defendants' motions to dismiss, Dkts. 7, 8, 9.

Signed on Galveston Island this 4th day of April, 2025.

_____

JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE